IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MELISSA ELIZABETH LUCIO, | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 4:22-cv-996 |
| v. | § | *DEATH PENALTY CASE* |
| | § | |
| BRYAN COLLIER, et al., | § | Lucio is scheduled to be executed on |
| *Defendants*. | § | April 27, 2022 |

---

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A STAY OF EXECUTION

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

JENNIFER WREN
Assistant Attorney General
State Bar No. 24088680
Southern Bar No. 2237541
*Counsel of Record*

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
Email: *jennifer.wren@oag.texas.gov*

*Counsel for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ................................................................... iii

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A STAY OF EXECUTION................................................................................................. 1

I.  *Ramirez*: The Stay, the Injunction, and the Interim ............................ 1

II.  Lucio's Shifting and Expanding Requests for Religious Accommodation ................................................................................................ 2

    A. Lucio's shifting requests and TDCJ's agreement to accommodate them anyway ............................................................................... 2

    B. Lucio's expanding requests in this Court ..................................... 5

    C. TDCJ's response: more accommodations........................................ 6

ARGUMENT .......................................................................................... 8

I.  A Stay of Execution Is Improper................................................... 8

II.  TDCJ's Accommodations Make an Injunction Unnecessary.................. 9

III.  Lucio Is Not Entitled to an Injunction............................................ 10

    A. Lucio has no likelihood of success on the merits of her claims because she failed to exhaust them ..................................... 10

    B. Lucio is not likely to succeed on the merits of her Free Exercise claims............................................................................. 13

        1. Lucio's challenge to TDCJ's limited temporal restriction on audible prayer is disingenuous and foreclosed by *Ramirez* ..................... 15

        2. Lucio's challenge to TDCJ's accommodation of her final communion is disingenuous and futile ......................................... 17

C. Lucio is not likely to succeed on the merits of her Free Exercise claims ............................................................................................ 21

D. Lucio is not likely to suffer irreparable injury absent a preliminary injunction ............................................................................................ 22

CONCLUSION ............................................................................................ 23

CERTIFICATE OF SERVICE ...................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page**

*Barbee v. Collier*, 2021 WL 4666778 (S.D. Tex. 2021) ..................................... 22

*Battaglia v. Stephens*, 824 F.3d 470 (5th Cir. 2016) ........................................ 22

*Booth v. Churner*, 532 U.S. 731 (2001) .............................................................. 11

*Brown v. Collier*, 929 F.3d 218 (5th Cir. 2019) .......................................... 13, 21

*Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012) ................................................ 11

*Hill v. McDonough*, 547 U.S. 573 (2006) ............................................................. 8

*Holt v. Hobbs*, 574 U.S. 352 (2015) ................................................................... 13

*Jones v. Bock*, 549 U.S. 199 (2007) .............................................................. 11, 13

*Mazurek v. Armstrong*, 520 U.S. 968 (1997)................................................... 9, 10

*Nelson v. Campbell*, 541 U.S. 637 (2004)........................................................ 8, 11

*Ochoa v. Collier*, 802 Fed. App'x 101 (5th Cir. 2020)...................................... 23

*O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987)........................................... 21

*Porter v. Nussle*, 534 U.S. 516 (2002) .............................................................. 11

*Ramirez v. Collier*, No. 21-5592, 2022 WL 867311 (2022).......................*passim*

*Rhines v. Weber*, 544 U.S. 269 (2005) ............................................................... 19

*Ross v. Blake*, 136 S. Ct. 1850 (2016)........................................................... 11, 12

*Turner v. Safley*, 482 U.S. 78 (1987) ................................................................. 21

*United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001) ................................. 23

*Walker v. Epps*, 287 Fed. App'x 317 (5th Cir. 2008) ....................................... 23

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ....... 9, 10

*Woodford v. Ngo*, 548 U.S. 81 (2006) ............................................................... 11

*Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001) .................................. 12

**Statutes**

42 U.S.C. § 1997e(a)....................................................................................... 11, 13

42 U.S.C. § 2000cc............................................................................................... 1

42 U.S.C. § 2000cc-1(a) ..................................................................................... 13

Tex. Penal Code § 38.11 .................................................................. 19

Tex. Penal Code § 38.11(a)(1), (b) ................................................... 19

Tex. Penal Code § 38.11(i) .............................................................. 19

IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MELISSA ELIZABETH LUCIO, | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 4:22-cv-996 |
| v. | § | *DEATH PENALTY CASE* |
| | § | |
| BRYAN COLLIER, et al., | § | Lucio is scheduled to be executed on |
| *Defendants*. | § | April 27, 2022 |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A STAY OF EXECUTION

Plaintiff Melissa Elizabeth Lucio is a Texas death row inmate who is currently scheduled to be executed after 6:00 p.m. (CDT) on April 27, 2022. Lucio filed a civil-rights complaint asserting a denial of her rights under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) [1] Docket Entry (DE) 1. Thereafter, Lucio filed the instant motion for stay of execution pending disposition of her § 1983 complaint. DE 7. Defendants' opposition to her motion for stay follows.

## I.   *Ramirez*: The Stay, the Injunction, and the Interim

In September 2021, the Supreme Court stayed TDCJ Inmate John Ramirez's execution based on his RLUIPA claims challenging TDCJ's

---

[1]      42 U.S.C. § 2000cc et seq.

1

restrictions prohibiting his spiritual advisor from praying aloud and touching him in the execution chamber. The Court granted certiorari on whether Ramirez was entitled to a preliminary injunction to permit full consideration of his claims, and, six months later, it held that he was. *Ramirez v. Collier*, No. 21-5592, 2022 WL867311 (2022). Executions were postponed in the intervening six months, *see* DE 7 at 6 n.1, but TDCJ's administrative procedures carried on.

## II.   Lucio's Shifting and Expanding Requests for Religious Accommodation

### A. Lucio's shifting requests and TDCJ's agreement to accommodate them anyway

On January 31, 2022, Lucio submitted a Step 1 grievance, requesting precisely what Ramirez did:

> I need to know whether my Spiritual Advisor[2] will be allowed to be in the execution chamber with me, and pray aloud for me, and whether or not he will be allowed to lay his hands or touch me, to Bless me in my final moments.
> . . .
>
> I am requesting to have my Spiritual Advisor present with me in the execution chamber, and to be allowed to lay his hands on me while praying aloud.

---

[2]      In January, Lucio also submitted a formal request to the warden for her spiritual advisor, Deacon Ronnie Lastovica, to be present with her in the chamber during her execution. After verifying Deacon Lastovica's credentials and completing his background check, TDCJ approved his presence in the chamber subject to his attendance of an orientation on April 19, 2022, and signing Participation Non-Disclosure Agreements.

Pl. Ex. 6. Awaiting *Ramirez*'s answers, TDCJ issued a qualified response: "At this time, the spiritual advisor is not allowed to touch the inmate or speak out loud once in the execution chamber." Pl. Ex. 6.

On March 2, 2022, Lucio filed a Step 2 grievance, appealing TDCJ's denial of her Step 1 grievance and adding on. This time she requested that her spiritual advisor be permitted to administer "Viaticum" or "the last rites"[3] to "unite [her] with Christ": "The only way this is possible during my execution is if, my Spiritual Advisor is allowed and present inside the execution chamber with me, where he is able to lay hands on me, and pray the Roman Rite."  Pl. Ex. 7. She went on to explain that the union could be "visibly expressed" with a final anointing by "making the sign of the cross on [her] forehead." Pl. Ex. 7.

Twenty-two days after Lucio filed her Step 2 grievance, the Supreme Court issued its opinion in *Ramirez*. Now knowing its rules prohibiting audible prayer and physical contact were unlikely to survive RLUIPA, TDCJ began preparing to accommodate Lucio's requests. Because her requests in her grievances and another written statement varied, TDCJ sought clarification.

On April 6, 2022, Director Bobby Lumpkin, Deputy Division Director Miguel Martinez, and Senior Warden Andrea Lozada met with Lucio to hear and understand exactly what accommodations she wanted during her

---

[3]     Lucio uses Viaticum and the last rites interchangeably. Pl. Ex. 7.

execution. Def. Ex. 1. Lucio stated that she wanted to be provided last rites, to be anointed with holy water or oil, and for her spiritual advisor to place a hand on her shoulder during the execution while praying. Mr. Lumpkin told Lucio that the anointment could occur at the conclusion of the 5:00 p.m. spiritual advisor visit and that her advisor would then join her in the chamber at 6:00 p.m. or after. He further explained that her spiritual advisor could place a hand on Lucio's shoulder and pray as long as her advisor did not speak over him, the Warden, or Lucio. Lucio indicated that she understood and had no objections, at which point the meeting concluded. Def. Ex. 1.

Within the hour, Mr. Lumpkin, Chief of Staff Jason Clark, and the individuals present at the earlier meeting went back to Lucio to make sure they understood whether her preference was to be anointed cell side at 5:00 p.m. or in the execution chamber. Lucio stated that she preferred for her anointment to occur while she was on the gurney in the execution chamber. Mr. Lumpkin agreed to facilitate her anointment on the gurney, concluding the second meeting. Lucio did not ask for communion in either meeting.

The following day, on April 7, 2022, TDCJ ruled on Lucio's Step 2 grievance, agreeing to permit her spiritual advisor to do everything she asked TDCJ to permit him to do:

> If your spiritual advisor is approved to be present inside the execution chamber during your execution pursuant to the established pre-approval process, your spiritual advisor will be

escorted into the execution chamber by a TDCJ representative, who stand next to your spiritual advisor throughout the execution. During the execution, your spiritual advisor will be allowed to:

1. *Anoint you on your forehead while you are on the gurney;*
2. *Stand at the head of the gurney and place one hand on your shoulder;*
3. *Pray aloud at a reasonable volume when prompted by the Warden; and*
4. *Pray silently at all other times.*

Your spiritual advisor will not be able to pray aloud while the CID Director or the Warden are speaking or when you are giving your last statement.

Pl. Ex. 7.

## B. Lucio's expanding requests in this Court

Catching a ride on Ramirez's coattails, Lucio did not wait for TDCJ to respond to the *Ramirez* opinion or her Step 2 grievance. She filed her § 1983 complaint March 28, 2022—four days after the Supreme Court decided *Ramirez*—raising Ramirez's claims and seeking the relief he sought. Still, Lucio did not express her desire for a final communion in her complaint. She did, however, file a declaration indicating that she "already received the last sacrament" but indicated that she "may request it again" if she "feel[s] . . . it is needed." Pl. Ex. 10 at 2 ¶10. On the deadline for her motion for stay of execution, she apparently felt the need. But she frames it differently, suggesting that she's been asking TDCJ all along to accommodate her request for final communion on the gurney. *See* DE 7 at 4-5 (describing final

communion as essential to Viaticum to allege that "TDCJ continued to deny [Lucio's] request that her spiritual advisor administer Viaticum in her last moments"). She also took issue with TDCJ's restriction on the timing of her spiritual advisor's audible prayer, as stated in her Step 2 grievance. DE 7, at 1, 7, 11.

## C. TDCJ's response: more accommodations

Recognizing Lucio's complaints in this Court misunderstood TDCJ's accommodations to deny her final communion and to impose an unpredictable limitation on the timing of her spiritual advisor's prayer, TDCJ responded with clarification and more offers to accommodate.

After conferring with TDCJ on the evening of Monday, April 11, the undersigned sent an email to Lucio's counsel raising the following points of discussion to facilitate Lucio's requested religious accommodations, as expressed in her motion for stay of execution:

1. In its response to Lucio's Step 2 grievance, TDCJ stated that her spiritual advisor may only "[p]ray aloud at a reasonable volume when prompted by the Warden." To clarify the limitations of this timing restriction, Lucio's spiritual advisor need only be silent when the CID Director or the Warden are speaking to facilitate the execution process and when Lucio is giving her last statement. At all other times in the execution chamber, Lucio's spiritual advisor will be permitted to pray aloud at a reasonable volume.

2. While TDCJ did not understand Lucio to request a final communion in her grievances or in subsequent communications, TDCJ is open to accommodating a final communion. But in order to do so, we need you to provide us with the specifics of her

6

requests, to include the timing, place, and the elements of communion she would like to receive. Once I hear back from you on this, I will notify TDCJ of Lucio's specific requests for them to determine whether they will be able to meet them.

Please let me know by COB tomorrow, April 12 (1) if the above clarification on the timing restriction adequately resolves Lucio's concern about its unpredictable application to her spiritual advisor's prayer; and (2) where, when, and what Lucio would like for her final communion. We don't have much time to resolve these issues before our April 13 deadline to respond, but again, I'm hopeful that we'll be able to.

Def. Ex. 2, at 2.

Lucio's counsel responded the following day, clarifying that Lucio is requesting "communion in the execution chamber in the form of wine and bread after she has received the Anointing of the Sick." Def. Ex. 2, at 1. With respect to the temporal limitation on Lucio's advisor's audible prayer, counsel asked for "assurance that Lucio's spiritual advisor [would] be able to deliver the audible prayers necessary to effectuate the last rites, including the sacraments of the Anointing of the Sick and Viaticum." Def. Ex. 2, at 1.

After reviewing Lucio's counsel's email, TDCJ has agreed to allow Lucio's spiritual advisor to administer her final communion while she is on the gurney by placing sacramental bread on her tongue and providing a wine substitute.

7

# ARGUMENT

## I.  A Stay of Execution Is Improper.

For religious-exercise claims raised in the execution context, a stay of execution is not "the proper form of equitable relief." *Ramirez v. Collier*, No. 21-5592, 2022 WL 867311, at **12, 14 (2022)[4]; *cf. Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)). If "a court determines that relief is appropriate . . . , the proper remedy is an injunction ordering the accommodation, not a stay of execution." *Ramirez*, 2022 WL 867311 at *14.  "This approach balances the State's interest in carrying out capital sentences without delay and the prisoner's interest in religious exercise." *Id.*

Lucio asks the Court to do precisely what *Ramirez* instructs it not to— that is, to stay her execution pending resolution of the merits of her RLUIPA and First Amendment claims. Disregarding the parts of *Ramirez* that foreclose her requested relief, Lucio advises the Court on practicalities instead. DE 7 at 14. She suggests that a stay would serve judicial economy because *Ramirez*'s remand proceedings might bear upon her case. But Defendants intend to accommodate, not litigate, Ramirez's religious exercise. Nor would it be

---

[4]     The *Ramirez* Court's instruction against granting stays was specific to RLUIPA claims, as those were the claims before it. *Ramirez*, 2022 WL 867311, at *12. Because the parties' respective interests are the same for First Amendment claims raised in the execution context, the rule must also be the same.

efficient to delay Lucio's execution to facilitate full consideration of her claims when injunctive relief effectively presumes their merits. Further, a preliminary injunction ultimately reduces Lucio's burden, as it awards relief without requiring her to demonstrate an entitlement thereto. The only thing a stay accomplishes that a preliminary injunction cannot is delay, which is precisely why the *Ramirez* Court instructed lower courts not to grant them in this context. *Ramirez*, 2022 WL 867311 at *14. *Ramirez* forecloses the stay Lucio seeks.

## II.    TDCJ's Accommodations Make an Injunction Unnecessary.

This Court's authority to grant preliminary relief ends at an injunction requiring TDCJ to accommodate Lucio's request for religious accommodations. But even then, its authority to do so is contingent upon Lucio "clear showing" that she meets all four of the elements for an injunction. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). TDCJ's continued accommodation places Lucio's burden beyond reach and, simultaneously, moots her request for preliminary relief.

Since *Ramirez*, TDCJ has gone to great lengths to understand and accommodate Lucio's religious requests for her execution. *See* Part II *supra*. Assuming her deacon's completion of the spiritual advisor orientation, TDCJ will allow him to:

1. Be present inside the execution chamber during her execution;
2. Administer her final communion while she is on the gurney by placing sacramental bread on her tongue and providing a wine substitute;
3. Anoint her on her forehead while she is on the gurney;
4. Stand at the head of the gurney and place a hand on her shoulder throughout her execution;
5. Pray aloud at a reasonable volume at any time except when the Director, the Warden, and Lucio are speaking;

This list reflects TDCJ's accommodation of all the religious requests Lucio asked TDCJ to accommodate. An injunction ordering TDCJ to do that which it has already agreed to do would be unnecessary.

## III.   Lucio Is Not Entitled to an Injunction.

If Lucio stands by her motion, her entitlement to injunctive relief requires her to make a "clear showing," *Mazurek*, 520 U.S. at 972 (1997), (1) "that [s]he is likely to succeed on the merits" of her claims; (2) "that [s]he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of the equities tips in h[er] favor"; and (4) "that an injunction is in the public interest." *Ramirez*, 2022 WL 867311, at **6, 12 (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). She fails

### A.   Lucio has no likelihood of success on the merits of her claims because she failed to exhaust them.

Section 1997(e) of the Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is *mandatory* "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 739–40 n.6 (2001); *see Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("[T]here can be no doubt that pre-filing exhaustion of [the] prison grievance processes is mandatory.") (citing *Woodford v. Ngo*, 548 U.S. 81 (2006) & *Jones v. Bock*, 549 U.S. 199 (2007)). Lucio's challenge to TDCJ's execution procedure is subject to the PLRA's strict exhaustion requirements. *See Nelson*, 541 U.S. at 643, 650; *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Under these requirements, Lucio had to pursue all administrative relief to its conclusion and comply with prison rules in doing so before filing suit. *Woodford v. Ngo*, 548 U.S. at 89-95; *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). She failed at both.

The TDCJ grievance procedure is a multistep process. Before invoking it, an inmate must first attempt to resolve her complaint informally. If that does not work, she may file a step one grievance, in which she must "clearly state[]" the "specific action required to resolve the complaint." *See* Texas Dept. of Criminal Justice, Offender Orientation Handbook 73-75 (Feb. 2017) (Prison Handbook). If her Step 1 grievance is denied, she may appeal by filing a Step

11

2 grievance, again "clearly stat[ing]" the "action required to resolve the complaint." Prisoner Handbook 75; *see also Ramirez*, 2022 WL 2022 WL 867311, at *4. To properly exhaust an inmate must "pursue the grievance remedy to conclusion." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This requires completion of both steps of TDCJ's grievance process before a complaint may be filed. *Id.*

Lucio cannot pick and choose which grievance procedures to comply with before filing suit. *See Ross*, 136 S. Ct. 1850, 1857 (2016). But that is precisely what she did. She did not invoke the grievance procedure at all for her final communion or her spiritual advisor's unrestricted speech in the execution chamber. And for Viaticum, she never attempted to informally resolve whether her deacon would be permitted administer the last rites or Viaticum in the execution chamber, nor did she file a Step 1 grievance seeking as much. Instead, she used the Step 2 grievance—meant to appeal TDCJ's denial of her Step 1 grievance requesting audible prayer and physical touch in the chamber—as a platform to seek a brand-new accommodation. Further, where the grievance procedure requires a clear statement of the action required to resolve a complaint, Lucio provided said "Viaticum." Her reference to religious ritual does not provide TDCJ with adequate notice of what it needs to do to accommodate that ritual.  Lucio's decision to forego two required steps along with her failure to clearly state the action required for resolution renders the

issues in her Step 2 grievance unexhausted. Her attempt to explain the terms of Viaticum now, in litigation, underscore her failure to comply with TDCJ's grievance procedures. Finally, Lucio's premature resort to litigation before receiving a ruling on her Step 2 grievance provides yet another reason that it is unexhausted. Three ways, Lucio's claim is unexhausted; the PLRA mandates its dismissal for any one of them. Lucio cannot succeed on the merits of her claims because she cannot bring them. 42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 211, 221.

## B.     Lucio is not likely to succeed on the merits of her RLUIPA claims.

RLUIPA protects only accommodation of requests "sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015). To establish her claim, then, Lucio must show (1) that the accommodation she seeks is "sincerely based on a religious belief and not some other motivation"; and (2) that Defendants' refusal to meet them substantially burdens her religious exercise. 42 U.S.C. § 2000cc-1(a); *Ramirez*, 2022 WL 867311, at *8; *see also Brown v. Collier*, 929 F.3d 218, 228–29 (5th Cir. 2019). Even if Lucio carries her burden, her claim fails if Defendants show that the "imposition of the burden" is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a); *see also Holt*, 574 U.S. at 362.

Lucio cannot show a likelihood of success on the merits of her RLUIPA claims because she fails to show that any of TDCJ's restrictions impose a substantial burden on her sincere religious exercise. Her motion is premised on a "No Contact" and "No Speaking" policy that no longer exists and whose application is belied by TDCJ's agreement to allow her deacon to pray aloud, administer communion, draw a cross on her forehead, and maintain contact with her throughout her execution. That TDCJ did not preemptively accommodate a communion she did not ask for or preemptively allow her spiritual advisor to pray aloud without restriction does not show that TDCJ's policies substantially burden her sincere religious beliefs. It shows either that TDCJ misunderstood her requests or that she did not make them to TDCJ.

When TDCJ received notice that Lucio misinterpreted its accommodations to be an outright denial of same, TDCJ opened the conversation again. According to Lucio's counsel, what remains of her requests for accommodations is that she would like (1) TDCJ's assurance that her spiritual advisor will be able to deliver the audible prayers necessary to effectuate the last rites, including the Anointing of the Sick and Viaticum; and (2) to have her final communion with wine.

### 1. Lucio's challenge to TDCJ's limited temporal restriction on audible prayer is disingenuous and foreclosed by *Ramirez*.

Assuming Lucio's deacon attends the required orientation, he will be permitted to pray the Roman Rite "in a slow, quiet voice, alternating with periods of silence," as Lucio has requested. Pl. Ex. 7. That TDCJ requires his silence when others are speaking is consistent with—not a denial of—Lucio's request. To be sure, she stated in her meeting with Mr. Lumpkin, Mr. Martinez, and Warden Lozada that she was satisfied the accommodations that included this restriction. TDCJ's ability to accommodate religious exercise is necessarily limited by the requests it receives.

TDCJ cannot accept Lucio's counsel's invitation for a goose chase to research the conditions that various Catholic rituals might require. *See* Def. Ex. 2, at 1 (seeking assurance that Lucio's counsel will be able to deliver the audible prayers to effectuate the last rites, including the sacraments of the Anointing of the Sick and Viaticum). An abundance of literature exists about Catholicism—its schisms, branches, and splinter groups—as well as the diversity of religious practice that flows therefrom. Even if TDCJ officials had the time and resources to conduct Lucio's religious research for her, they are neither theologians nor mind readers. Lucio is in the best position to say what she needs for her religious exercise. And she did so on several occasions. She also expressed her satisfaction with the TDCJ's accommodations allowing her

spiritual advisor's prayer in the chamber. TDCJ took Lucio at her word and now, she complains they did.

Lucio's latest request for reassurance, however, does not support a RLUIPA claim, as it fails to identify a restriction or policy that substantially burdens her sincere religious exercise. And even if Lucio's indecision eventually led her to a RLUIPA claim, eight Supreme Court justices just endorsed the temporal limitation TDCJ has adopted here as a least-restrictive means to furthering the State's compelling interests in the execution chamber:

> Prison officials could impose reasonable restrictions on audible prayer in the execution chamber—such as . . . requiring silence during critical points in the execution process (including when the execution warrant is read or officials must communicate with one another) . . . and subjecting advisors to immediate removal for failure to comply with any rule.

*Ramirez*, 2022 WL 867311, at *10. Overlooking the Court's rule, Lucio suggests that the Warden's deference to spiritual advisors in the execution chamber would be less restrictive. DE 7 at 9. That may be true, but it would also thwart the State's compelling interest in preventing disruptions and maintaining solemnity and decorum in the chamber. Further, Lucio fails to identify any other jurisdiction that has allowed outside spiritual advisors to speak in the chamber without restriction. Nor has Texas ever permitted its own chaplains to do so.

## 2. Lucio's challenge to TDCJ's accommodation of her final communion is disingenuous and futile.

Lucio did not request a final communion in her Step 1 grievance. While she referenced Viaticum in her Step 2 grievance, TDCJ did not understand such to constitute a request for final communion. To be sure, she explained "the only way to make [Viaticum] possible" was to allow her spiritual advisor to "pray the Roman Rite . . . in a slow, quiet voice, alternating with periods of silence." Pl. Ex. 7. Nor does it appear that Lucio, the author of her grievance, intended to request a final communion when she said Viaticum, as she filed a declaration in this Court the same day, in which she stated that she already had her last communion. Pl. Ex. 10. Thirty-six days later, when TDCJ asked Lucio exactly what she wanted in the execution chamber, communion still was not on her list. Nor was communion mentioned in her 1983 complaint. *See* DE 1. For the first time in her motion to stay her execution, Lucio suggests that she was sincerely asking TDCJ for communion on the gurney all along. And according to her counsel, she wants it with wine.

Lucio's request for the administration of her final communion on the gurney with wine is the single outstanding request TDCJ has not agreed to accommodate. But Lucio cannot show TDCJ's refusal to facilitate her consumption of wine just before her lethal injection substantially burdens her sincere religious exercise.

For nearly six-and-a-half years, Lucio has been receiving communion in prison without wine, and yet she hasn't a single grievance to show for it. *See* Pl. Ex. 13 ¶ 4; Pl. Ex. 21 ¶5; Ex. 22 ¶5. Before she had an execution date, the prison's contraband rules did not seem to burden her religious exercise at all, or at least she never said so. Fellow inmate, Darlie Lynn Routier, on the other hand, reports that she and Lucio "believe that . . . the body of Jesus Christ is imbued" in the communion they receive. Ex. 22 ¶5. This belief is further confirmed by the biblical description in Luke 22:20, which states, "This cup is the new covenant in my blood, which is poured out for you." *See* Luke 22:22, New Catholic Bible, available online at https://www.biblegateway.com/passage/?search=Luke%2022:19-21&version=NCB (last visited April 13, 2022). Because Lucio's professed religious belief acknowledges that the beverage consumed as part of the communion sacrament is transformed into the blood of Christ, she cannot show that TDCJ's proposed accommodation of a non-alcoholic wine substitute for communion would not likewise be transformed, much less substantially burden her religious exercise.

Moreover, the timing of Lucio's request, its continued expansion, and inconsistency with her religious exercise suggests that her primary motivation is to stop her execution, not to have her second final communion with wine

18

minutes before it. *See Ramirez*, at 11 (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005)). Lucio fails to carry her burden under RLUIPA.

In any event, Texas meets its burden, as TDCJ's refusal to allow alcoholic beverages onto its premises furthers the state's compelling security interests and is the least-restrictive means of doing so. Texas has a compelling security interest in preventing consumption of alcoholic beverages in its prisons, and the Texas Legislature has codified that compelling interest in § 38.11 of the Texas Penal Code. Under this statue, it is a third-degree felony offense to take an alcoholic beverage into a correctional facility or provide an alcoholic beverage to a person in the custody of a correctional facility. § 38.11(a)(1), (b). Although this statute provides an exception for a duly authorized member of the clergy with rights and privileges granted by an ordaining authority that includes the administration of a religious ritual requiring the presence or consumption of an alcoholic beverage, the exception applies only if the member of the clergy *personally* consumes all of the alcoholic beverage or departs from the facility with any portion of the beverage not consumed. § 38.11(i). Thus, the statutory exception prevents consumption of an alcoholic berverage by an inmate even for the purpose of religious ritual.

Consistent with this statute, TDCJ policy also prohibits the use or possession of alcoholic beverages by inmates. *See* TDCJ Offender Handbook at 89, 98 (defining contraband to include alcoholic beverages); TDCJ Disciplinary

Rules and Procedures for Offenders at 36 (use or possession of an alcoholic beverage is a Level 1 offense).

TDCJ's proposed accommodation of allowing a non-alcoholic wine-substitute is the least restrictive means of furthering the compelling interest of preventing the introduction of alcoholic beverages in TDCJ facilities. Lucio admits that the bread and wine received as communion are representations that are transformed through the sacrament of communion into the body and blood of Christ. Thus, she provides no reason that requiring the use of a non-alcoholic wine-substitute for this transformation substantially burdens her religious exercise of receiving the body and blood of Christ as communion, while TDCJ has demonstrated both a compelling security interest and a least restrictive alternative to Lucio's request for wine.

Nor does Lucio point to any other jurisdiction that has allowed an inmate to consume wine when receiving communion during an execution. Not even the Federal Bureau of Prisons allows for wine at an execution. DE 7 at 9 (describing Father O'Keefe's administration of communion during a federal execution by placing a wafer on the inmate's tongue). Lucio's ever-changing, eleventh-hour requests for more should be denied.

### C. Lucio is not likely to succeed on the merits of her Free Exercise claims.

Lucio also claims that TDCJ's restrictions violate the First Amendment's Free Exercise Clause, and she applies the wrong standard to prove it. *See* DE 7 at 11-12 (asserting strict scrutiny standard applies). Where a prison regulation forms the basis of a Free Exercise claim, "the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Brown v. Collier*, 929 F.3d 218, 232 (5th Cir. 2019).

Lucio's claim plainly fails to satisfy *Turner*'s test. First, she cannot show that TDCJ's restrictions on audible prayer and contraband in the chamber are not connected to its security interest. *See* 482 U.S. at 89. Second, she cannot show there are no alternative means for her to exercise her religion, as TDCJ is allowing her deacon to anoint her, administer final communion, pray aloud with her, and make physical contact with her in chamber. Third, Lucio is not likely to succeed on the merits of her claim considering the impact the accommodation—i.e., the "ripple effect"—would have on prison resources. *Turner*, 482 U.S. at 90. Lastly, Lucio is not likely to succeed in showing the existence of a readily available alternative, where she offers none, and the only alternative policy before the Court is the BOP's, which imposes the restrictions Lucio complains of. Because Lucio fails to make a substantial case on the

merits of her Free Exercise Claim, she is not entitled to a preliminary injunction ordering TDCJ accommodate her requests.

### D. Lucio is not likely to suffer irreparable injury absent a preliminary injunction.

Lucio claims that she would suffer irreparable harm absent injunctive relief because the Supreme Court and a district court found, respectively, that Ramirez and Barbee would. DE 7 at 12-13. But the courts' irreparable injury findings turned on the merits of the plaintiffs' claims, and, despite her best efforts, Lucio's claims are not theirs. Ramirez and Barbee complained about TDCJ's categorical ban on their spiritual advisor's audible prayer and physical contact with them in the execution chamber. The restrictions Lucio faces are (1) that her spiritual advisor must pause when the Warden, CID Director, or she is speaking; and (2) that TDCJ will not facilitate her consumption of wine just before she receives the lethal injection. Because neither of the restrictions Lucio faces are protected religious exercise, she fails to show that she is likely to suffer irreparable harm absent preliminary relief. *See Ramirez*, 2022 WL 867311, at *12 (finding that Ramirez was "likely to suffer irreparable harm . . . because he [would] be unable to engage in protected religious exercise in the final moments of his life."); *Barbee v. Collier*, 2021 WL 4666778, at *8 (S.D. Tex. 2021) (quoting *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016), to show that irreparable injury question is subsumed in the merits question); *see*

*also Ochoa v. Collier*, 802 Fed. App'x 101, 106 (5th Cir. 2020); *Walker v. Epps*, 287 F. App'x at 375.

Lucio also fails to make a clear showing of irreparable injury because TDCJ has given her everything she asked it for and, now, more. However long-standing the religious traditions of Viaticum, such is insufficient to establish a harm personal to Lucio, who only began to prioritize her spiritual advisor's unrestricted prayer and communion when TDCJ's religious accommodations undermined her other arguments to delay her execution. And even if the sincerity of Lucio's request were not at issue, TDCJ's accommodations adequately mitigate whatever speculative harm she may claim based on her spiritual advisor's brief pauses in prayer and consumption of grape juice for her final communion. *See Walker v. Epps*, 287 Fed. App'x 317, 376 (5th Cir. 2008) (quoting *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (stating that "[s]peculative injury is not sufficient" to demonstrate irreparable harm).

## CONCLUSION

For these reasons, Plaintiff's request for a stay should be denied, as should injunctive relief.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
For Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

s/ Jennifer Wren
JENNIFER WREN
Assistant Attorney General
State Bar No. 24088680
Southern District No. 2237541

P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
Fax: (512) 320-8132
email:  jennifer.wren@oag.texas.gov

*Counsel for Defendants*

24

## CERTIFICATE OF SERVICE

I do herby certify that on April 13, 2022, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Southern District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Richard Ellis
75 Magee Ave.
Mill Valley, CA
(415) 389-6771
a.r.ellis@att.net

Tivon Schardl
Capital Habeas Unit
Timothy Gumkowski
919 Congress, Ste. 950
Austin, TX 78701
(737) 207-3008
tivon_schardl@fd.org

s/ Jennifer Wren
JENNIFER WREN
Assistant Attorney General